UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRED E. HARTER,

      Petitioner,

                                          CASE NO. 2:08-CV-11370
v.                                    JUDGE BERNARD A. FRIEDMAN
                                          MAGISTRATE JUDGE PAUL J. KOMIVES

DEBRA SCUTT,

      Respondent.
                               /

**REPORT AND RECOMMENDATION ON (1) PETITIONER'S APPLICATION FOR A WRIT OF HABEAS CORPUS (docket #1) and (2) RESPONDENT'S MOTION TO DISMISS (docket #7)**

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus on the merits. If the Court accepts this recommendation, the Court should deny as moot respondent's motion to dismiss for lack of exhaustion.

II.     REPORT:

A.     *Procedural History*

      1.      Petitioner Fred Harter is a former state prisoner, currently on parole. At the time he filed his habeas application, petitioner was confined at the G. Robert Cotton Correctional Facility in Jackson, Michigan.

      2.      On September 17, 1979, petitioner was sentenced to a term of 40-60 years' imprisonment pursuant to his plea-based convictions for second degree murder in the Branch County Circuit Court.[1] Petitioner was paroled in May 1991, and was subsequently returned to prison for

---

[1] Petitioner was also sentenced pursuant to his contemporaneous plea-based conviction for armed robbery. The sentence on that conviction was discharged in December 1980.

violating his parole. Petitioner was paroled again in January 1996. In February 1996, petitioner pleaded guilty to a charge of breaking and entering. On March 21, 1997, petitioner was sentenced to a term of 5-7½ years' imprisonment on this charge. Petitioner's parole was again revoked. In November 2001, petitioner was again granted parole, and in May 2003 he again violated his parole and was returned to prison. Petitioner was most recently paroled on May 20, 2009, during the pendency of this habeas action.

    3.    Relevant to the instant habeas application, petitioner filed a complaint for writ of habeas corpus in the Jackson County Circuit Court on October 10, 2005, raising the following claims:

> I. WHEN THE MICHIGAN LEGISLATURE AMENDED MCL 800.33 CHANGING THE MANNER IN WHICH SGT [SPECIAL GOOD TIME] WAS TO BE AWARDED, THE LEGISLATURE VIOLATED THE PROHIBITION AGAINST EX POST FACTO LEGISLATION UNDER ARTICLE 1, §9 CLAUSE 3, AND §10 CLAUSE 1, OF THE UNITED STATES CONSTITUTION, AND ARTICLE 1, §10 OF THE MICHIGAN CONSTITUTION, WHEN THE NEW PROCEDURE WAS RETROACTIVELY APPLIED TO PETITIONER.
>
> II. THE 5TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE 1, §17 OF THE MICHIGAN CONSTITUTION GIVE PETITIONER A DUE PROCESS LIBERTY INTEREST IN THE 2773 DAYS OF SPECIAL GOOD TIME AWARDED PETITIONER IN 1991, AND ITS CONFISCATION IN 2004, DONE WITHOUT DUE PROCESS OF LAW REQUIRES THOSE SGT DAYS BE RESTORED TO PETITIONER.
>
> III. WHEN THE DOC CHANGED THE METHOD OF CALCULATING RGT [REGULAR GOOD TIME] AND SGT, AND APPLIED THE NEW METHOD TO PETITIONER, THE CHANGE IN CALCULATING GOOD TIME WAS EX POST FACT LAW PROHIBITED BY ARTICLE 1, §9, CLAUSE 3, §10 CLAUSE 1 OF THE UNITED STATES CONSTITUTION, AND ARTICLE 1, §10 OF THE MICHIGAN CONSTITUTION.

The trial court denied the petition on November 15, 2005. The court explained that petitioner's

minimum sentence was not at issue because petitioner had been granted a parole on both the murder and breaking and entering sentences. The court further explained that petitioner's maximum sentence was computed by adding the 60 year maximum on the murder conviction to the 7½ year maximum on the breaking and entering conviction, resulting in a discharge date on the maximum sentence of October 12, 2017. The court also noted that the MDOC had declined to award plaintiff any special good time credit on the 60 year maximum sentence on November 4, 2004. Accordingly, the court concluded that petitioner was being held pursuant to a legally imposed sentence, and was not entitled to habeas corpus relief. *See Harter v. Vasbinder*, No. 05-006364-AH (Jackson County, Mich., Cir. Ct. Nov. 15, 2005).

    4.       Petitioner filed a complaint for habeas corpus as well as a motion for discovery in the Michigan Court of Appeals raising the three claims raised in the trial court, now denominated as claims II, III, and V, as well as two additional claims denominated claims I and IV:

> I.      PLAINTIFF HAS A DUE PROCESS LIBERTY INTEREST UNDER THE 5TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, §17 OF THE MICHIGAN CONSTITUTION, TO HAVE A PRIOR SENTENCE TERMINATED BEFORE BEING PAROLED ONTO THE REMAINING PORTION OF A CONSECUTIVE SENTENCE IMPOSED PURSUANT TO MCL 768.7a(2); AND, AFTER REDUCTIONS OF THE SENTENCE FOR REGULAR AND SPECIAL GOOD TIME, TO BE DISCHARGED FROM HIS SENTENCE.
>
> IV.    PLAINTIFF HAS A DUE PROCESS LIBERTY INTEREST UNDER THE 5TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE 1, §17 OF THE MICHIGAN CONSTITUTION, TO HAVE HIS SENTENCE PROPERLY CALCULATED TO ENSURE HE IS DISCHARGED FROM PRISON UPON SERVICE OF HIS SENTENCE, WITH ALLOWANCE FOR REGULAR AND SPECIAL GOOD TIME.

The court of appeals denied the complaint and motion for discovery in a brief order. *See Harter v. Department of Corrections*, No. 273278 (Mich. Ct. App. Feb. 22, 2007).

  5. Petitioner sought leave to appeal these five issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See Harter v. Department of Corrections*, 480 Mich. 854, 737 N.W.2d 512 (2007).

  6. Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on March 31, 2008. As grounds for the writ of habeas corpus, he raises the five claims that he presented in the Michigan Court of Appeals and Michigan Supreme Court.

  7. Respondent filed a motion to dismiss on October 8, 2008. Respondent argues that petitioner's habeas claims are unexhausted because claims I and IV were not presented in the trial court.

  8. Petitioner filed a response to the motion to dismiss on October 23, 2008. He contends that the claims are exhausted because he presented them to both the Michigan Court of Appeals and the Michigan Supreme Court, thus giving those courts the opportunity to correct the alleged constitutional violations.

B. *Exhaustion*

  The federal habeas statute provides, in relevant part, that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State[.]" 28 U.S.C. § 2254(b)(1)(A). Thus, "[f]ederal habeas relief is available to state prisoners only after they have exhausted their claims in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999). A petitioner has not exhausted his remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). To satisfy the exhaustion requirement, a petitioner "must have 'fairly presented the substance of each

of his federal constitutional claims to the state courts.'" *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004) (quoting *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995)). A petitioner "fairly presents" his claim to the state courts by either (1) relying upon federal cases employing federal constitutional analysis; (2) relying upon state cases employing such an analysis; (3) phrasing the claim in terms of federal constitutional law; or (4) alleging facts within the mainstream of federal constitutional law. *See Clinkscale*, 375 F.3d at 437 (quoting *Newton v. Million*, 349 F.3d 873, 878 (6th Cir. 2003)). Further, the petitioner must fairly present the claim at each level of state court review. *See O'Sullivan*, 526 U.S. at 845-47.

Exhaustion is not required only if "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). A "mixed petition," that is a petition which contains both exhausted and unexhausted claims, must be treated as unexhausted in its entirety. *See Rose v. Lundy*, 455 U.S. 509, 522 (1982). A federal habeas court has no authority to grant relief on even an exhausted claim where the petition also contains unexhausted claims. *See Rockwell v. Yukins*, 217 F.3d 421, 424 (6th Cir. 2000).

Here, petitioner's first and fourth claims were not presented in the trial court, and thus they are unexhausted. However, assuming that petitioner's claims are partially unexhausted, the Court should nevertheless consider the claims on the merits. Despite the exhaustion requirement, a habeas petition "may be *denied* on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2) (emphasis added). Thus, a federal court may decide a habeas petition on the merits when the grounds for relief are without merit or are not cognizable on habeas review. *See Cain v. Redman*, 947 F.2d 817, 820 (6th Cir.

1991); *Prather v. Rees*, 822 F.2d 1418, 1421-1422 (6th Cir. 1987). In these circumstances, the court should dismiss the non-federal or frivolous claim on its merits to save the state courts the useless review of meritless constitutional claims. *See Cain*, 947 F.2d at 820. Here, as explained below, petitioner's claims are plainly meritless. Accordingly, the Court should deny the petition on that basis, rather than require further proceedings in the state courts.

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme

Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.   *Denial of Special Good Time Credits (Claims II-V)*

Petitioner contends that at the time he was sentenced special good time credits were awarded automatically, and thus the denial of special good time credits pursuant to MICH. COMP. LAWS § 800.33 violated both the Ex Post Facto Clause and his right to due process. The Court should conclude that these claims are without merit.

1.   *Ex Post Facto*

Article 1, § 10 of the United States Constitution prohibits states from passing *ex post facto* laws. In *Collins v. Youngblood,* 497 U.S. 37 (1990), the Supreme Court explained that the Ex Post Facto Clause of the U.S. Constitution incorporated "a term of art with an established meaning at the time of the framing of the Constitution." *Id*. at 41. In connection with this interpretation, the Court held that the Clause targets laws that "retroactively alter the definition of crimes or increase the punishment for the criminal act." *Collins,* 497 U.S. at 43 (*citing to Calder v. Bull,* 3 U.S. (Dall.) 386, 391-392 (1798)(Chase, J.); *Beazell v. Ohio,* 269 U.S. 167, 169-170 (1925)). To fall within the *ex post facto* prohibition, a law must be retrospective, *i.e.*; "it must apply to events occurring before its enactment" and it "must disadvantage the offender affected by it." *Weaver v. Graham,* 450 U.S. 24,

29 (1981). The classic formulation of what constitutes an ex post facto law was set forth by Justice Chase in *Calder v. Bull*, 3 U.S. (3 Dall.) 386 (1798):

> 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

*Id.* at 390. Thus, an ex post facto law is one which: (1) punishes an act previously committed as a crime, although the act was not a crime when done; (2) increases the penalty for a crime after its commission; and (3) deprives a defendant of any defense which was available at the time the act was committed. *See Collins*, 497 U.S. at 52.

On December 17, 1990, the MDOC awarded petitioner 2,773 days of special good time credit on the minimum sentence only; no special good time credit was awarded on the maximum sentence. Petitioner contends that because special good time credit was automatically awarded to prisoners at the time he was convicted, the failure of the MDOC to award him special good time credits on his maximum sentence pursuant to MICH. COMP. LAWS § 800.33 violated the Ex Post Facto Clause. This claim is without merit, because under the law as it existed at the time of petitioner's crime and conviction in 1976 he was not automatically entitled to special good time credits. At the time of petitioner's conviction, the version of § 800.33 was that which had been in existence since 1953, and provided that

> "[t]he warden of any institution subject to the provisions of this act *may*, with the consent and approval of the commissioner of corrections, extend the good time allowance beyond that herein specifi[ed], to persons whom he deems to have achieved a decided reformation since the date of commitment or for good work records or for examplary conduct[.]"

*Langworthy v. Department of Corrections*, No. 211314, 1999 WL 33437200, at *5 (Mich. Ct. App. Aug. 27, 1999) (quoting MICH. COMP. LAWS § 800.33).  In 1978, Proposal B was adopted by the Michigan electorate.  This Proposal provided that prisoners convicted of certain crimes were not eligible for regular or special good time credits on their minimum terms of imprisonment; however such offenders remained eligible for good time credits on their maximum terms.  To correct this anomaly, the Michigan legislature amended § 800.33 in 1982 to replace the system of good time credits for Proposal B offenders with a system of "disciplinary credits" applicable to both minimum and maximum terms.  *See Wollett v. Curtis*, No. 04-CV-60113, 2006 WL 245294, at *4 (E.D. Mich. Feb. 28, 2006) (Battani, J.).  However, both 1978 amendments effected by Proposal B and the 1982 amendments by the legislature have prospective application only.  Thus, similar to the statute as it existed since 1953, the current version of § 800.33 provides that "[t]he warden of an institution may grant special good time allowances to eligible prisoners who are convicted of a crime that is committed before April 1, 1987."  MICH. COMP. LAWS § 800.33(12).

     Thus, the law applied to petitioner is exactly the law in existence at the time of his crime and conviction: the warden may, but is not required to, award special good time credits.  Because "petitioner has failed to show that special good-time credit was ever mandatory under Michigan law," and has "failed to show that special good-time credit was ever awarded other than by the discretion of the warden," he has "not shown any change in the law governing special good-time credits by which he was disadvantaged.  Accordingly, no violation of the Ex Post Facto clause occurred."  *Wollett*, 2006 WL 475294, at *7.

     Nor can petitioner show that he was subjected to an ex post facto violation by the MDOC's refusal to grant him special good time credits on his maximum sentence in 2004.  Petitioner argues

10

that this failure amounted to a revocation of his previously granted good time credits, which were applied to his minimum sentence. However, it is clear that these special good time credits were awarded only against petitioner's minimum sentence. The disposition sheet clearly indicates that no special good time credits were awarded against petitioner's maximum sentence. *See* Pet., Ex. C. Petitioner has cited no law which requires that the special good time credits be applied equally to the minimum and maximum sentences. Thus, the denial of special good time credits on the maximum sentence in 2004 did not in any way revoke the previously granted good time credits on the minimum sentence. Accordingly, the Court should conclude that petitioner's ex post fact claims are meritless.[2]

    2.    *Due Process*

Petitioner also contends that he had a due process right to the accumulation of special good time credits, and thus the failure to award these credits without affording him any sort of procedure violated the Due Process Clause. The Court should conclude that this claim is without merit.

The Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law[.]" U.S. CONST. amend XIV, § 1. By its terms, therefore, the

---

[2]Petitioner also appears to contend that, regardless of the statutory framework, the MDOC had a policy of automatically awarding special good time credits immediately upon a prisoner's incarceration. Petitioner provides no support for this assertion. While it may be true that the Department calculated the special good time credits upon incarceration to provide an estimate of the prisoner's release date, this is different from the credits having been actually awarded to the petitioner. The policy in effect at the time of petitioner's conviction explicitly provided that "[d]ischarge cases will be reviewed for special good time *alllowance* at least 30 days before the expiration of the maximum less all allowable good time credits." MICH. DEP'T OF CORRECTIONS, POLICY DIRECTIVE DWA-45.01 (Apr. 19, 1976) (emphasis added) (attached as Exhibit J to the state's response to petitioner's application for leave to appeal in the Michigan Supreme Court). Thus, although possible good time was calculated at intake, the actual award of good time did not occur until the review for allowance when a prisoner neared the end of his sentence. Further, the current version of the policy makes clear that this initial calculation was just that–an initial calculation of a projected release date, and not an actual award of special good time credits. *See* MICH. DEP'T OF CORRECTIONS, POLICY DIRECTIVE 03.01.100(B) (May 11, 2009).

particular procedures required by the clause apply only to deprivations of "life, liberty, or property;" they do not apply to deprivations of other interests. *See Board of Regents v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). In this case, petitioner has no liberty or property interest in earning special good time credits, and thus the Due Process Clause does not require the state to follow any particular procedures.

"A liberty interest can arise in one of two ways: (1) from the Due Process Clause itself; or (2) from a state or federal statute." *Ho v. Greene*, 204 F.3d 1045, 1058 (10th Cir. 2000). *See generally*, *Sandin v. Conner*, 515 U.S. 472, 477-87 (1995). As to the first, of its own force the Due Process Clause does not guarantee an inmate a right to earn good time credits against his sentence. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). Thus, petitioner has a protected liberty interest only if Michigan law creates such an interest. Petitioner cannot show that Michigan has created such an interest because, as discussed above, the award of special good time credits is, and always has been, a matter of the warden's discretion. Again, Judge Battani's reasoning in *Wollett* is on point and persuasive:

> The Sixth Circuit Court of Appeals has not yet addressed the question whether the Michigan statute governing the award of special good-time credits creates a protected liberty interest in special good-time credits. Other courts have declined to find that prisoners have a protected liberty interest in good-time credits awarded on a discretionary basis. *See Cook v. Wiley*, 208 F.3d 1314, 1322 (11th Cir.2000) ("[I]f the relevant statute places no substantive limitations on official discretion in granting an early release from a valid sentence, no constitutionally protected liberty interest is implicated.") (internal quotation omitted); *Abed v. Armstrong*, 209 F.3d 63, 66-67 (2nd Cir.2000), *cert. denied* 531 U.S. 897, 121 S.Ct. 229, 148 L.Ed.2d 164 (Oct. 2, 2000) (holding that although prisoners have a liberty interest in good-time credit already earned, no such interest has been recognized in the opportunity to earn good-time credit).
> The statutory framework for awarding special good-time credits in Michigan provided such credits to be awarded at the discretion of the warden for behavior that

> is in some way exemplary. This is in contrast to regular good-time credits which are awarded automatically for months during which a prisoner has not violated prison or state rules. Based on this distinction between the revocation of credits already awarded and the decision not to award credits that are awarded only at the discretion of the warden under limited circumstances, this Court holds that there is no liberty interest in special good-time credits.

*Wollett*, 2006 WL 475294, at *6. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.[3]

E.      *Termination of Prior Sentence (Claim I)*

Petitioner also contends that the Michigan Parole Board should have terminated the remaining 60 years maximum sentence on the murder conviction when he was granted parole with 2½ years remaining on the maximum sentence for the breaking and entering conviction. In support of this claim, petitioner relies on MICH. COMP. LAWS § 768.7a, which in relevant part provides:

> If a person is convicted and sentenced to a term of imprisonment for a felony committed while the person was on parole from a sentence for a previous offense, the term of imprisonment shall begin to run at the expiration of the remaining portion of the term of imprisonment imposed for the previous offense.

MICH. COMP. LAWS § 768.7a(2). Petitioner argues, essentially, that because his consecutive breaking and entering sentence was allowed to run and he was paroled on that sentence, this must mean that the maximum term on the murder conviction has expired or been discharged by the Parole Board. This interpretation of the statute, however, was rejected by the Michigan Supreme Court in *Wayne County Prosecutor v. Department of Corrections*, 451 Mich. 569, 548 N.W.2d 900 (1996).

In that case, the county prosecutor argued in the supreme court that § 7(a)(2) "must mean

---

[3]To the extent petitioner contends that he was denied due process by the revocation of previously awarded special good time credits, the claim is without merit. As explained above, petitioner was never awarded good time credits with respect to the maximum sentence, and thus the warden's failure to award such credits in 2004 did not amount to a revocation of the credits previously awarded against the minimum sentence in 1991.

13

that parolees are required to serve the maximum of the earlier sentence." *Id.* at 579, 548 N.W.2d at 904-05.  The supreme court rejected this argument, explaining:

> This contention ignores the Legislature's intent, as evidenced by the fact that the language of § 7a(2) closely copied the language of § 7a(1), to analogize a parolee who commits an offense while on parole to an inmate or escaped prisoner who commits another offense.
> The department has consistently construed the language of § 7a(1) since its enactment by 1954 P.A. 100. For over forty years, the department has computed the eligibility for parole of an inmate who commits a crime in prison or an escapee who commits a crime while escaped by adding the consecutive minimum terms of all the offenses for which he is incarcerated in state prison. Thus, consecutive sentences imposed on persons who, while incarcerated or on escape, commit another crime will commence to run when the total of the minimum sentences imposed for prior offenses has been served. Accordingly, if an inmate or escapee, who has served beyond his minimum term, commits an offense while incarcerated or while on escape, the "consecutive" sentence would commence to run immediately.
> The department has been consistent in the construction of § 7a(1) since its enactment by 1954 P.A. 100. This statutory construction of the department has gone unchallenged until this litigation, entitling it to considerable deference by this Court. This Court will ordinarily assume that the Legislature was aware of past practice in the administration of a nearly identical provision of law. Absent other evidence, we conclude that the Legislature expected a similar approach in the administration of § 7a(2) as had been taken by the department regarding § 7a(1).
> There is nothing in the language of the statute or in the record that demonstrates a legislative intent to change the consistent construction of § 7a(1), nor is there any evidence that the Legislature sought to have parolees, or expected that parolees would be, treated differently in this regard from prisoners and escapees who commit new crimes.
> The department has consistently and without challenge construed § 7a(1) for too long to justify reading the same language in § 7a(2) as a legislative decision to alter the method of sentence calculation as advocated by the prosecutor. The Legislature's intent in enacting § 7a(2) was simply to extend the statutory provisions of § 7a(1) to parolees[.]

*Id.* at 579-81, 548 N.W.2d at 905.  In other words, the second sentence is consecutive not to the maximum sentence, but to the minimum sentence of the earlier term plus whatever additional term imposed as a result of the parole violation.  *See id.* at 584, 548 N.W.2d at 906-07.  Nothing in this construction of the statute suggests that the serving of the consecutive sentence in any way cuts short

14

the maximum term on the original conviction. And this interpretation of the statute by the Michigan Supreme Court is binding on this Court. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Thus, petitioner cannot show a due process violation based on the Parole Board's failure to discharge him from the maximum sentence on the murder conviction.

F.   *State Law Claims*

Finally, to the extent that petitioner bases his claims on provisions of the Michigan constitution, the claims are not cognizable on habeas review. It is well established "that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Thus, petitioner's claims based on the Michigan constitution do not provide a basis for habeas relief. *See Taylor v. Lecureux*, No. 94-2239, 1995 WL 290271, at *3 (6th Cir. May 11, 1995) (claim premised on Michigan constitution not cognizable in habeas proceeding); *see also*, *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004) (Gadola, J.); *Flagg v. Robinson*, No. 99-CV-75474-DT, 2000 WL 1772607, at *14 (E.D. Mich. Oct. 31, 2000) (Hood, J.).

G.   *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus on the merits. If the Court accepts this recommendation, the Court should deny as moot respondent's motion to dismiss for lack of exhaustion.

III.   <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 7/21/2009

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on July 21, 2009.
>
> s/Eddrey Butts
> Case Manager